TIERNEY *v.* COLLEN.

1. USURY—SECURITY FOR SURETY ON BAIL BOND.
   Land contract by which vendees agreed to repurchase property
   they had deeded to surety on stepson's bail bond as security,
   upon which seven per cent. interest was charged and which
   comprised balance of previous contract, accrued interest
   thereon, amount paid stepson's attorneys and a sum for trips
   in connection with furnishing bond *held,* not usurious al-
   though item for trips was disallowed on foreclosure, such
   items as amounts paid for insurance premiums, taxes and
   costs of circuit court commissioner being proper items for
   which vendees should account to plaintiff.

2. SAME—LOANS—PAYMENT FOR SERVICES.
   If a sum in excess of statutory limit is paid as a commission
   or bonus for a loan, then the transaction is subject to taint
   of usury, but if the sum so paid is for services rendered or for
   profits earned on a transaction other than the making of the
   loan then the transaction is free from usury.

3. SAME—TESTED AS OF TIME OF EXECUTION OF CONTRACT.
   The question of whether a contract is usurious or not must be
   decided with reference to the time when it was entered into.

Appeal from Bay; Houghton (Samuel G.), J. Sub-
mitted January 18, 1935. (Docket No. 132, Calendar
No. 38,036.) Decided June 3, 1935.

Bill by Harry J. Tierney against James W. Collen
and wife to foreclose a land contract. Cross-bill by
defendants against plaintiff for an accounting be-
cause of alleged usury. Decree for plaintiff. De-
fendants appeal. Affirmed.

*Hubert J. Gaffney,* for plaintiff.

*B. J. Henderson,* for defendants.

EDWARD M. SHARPE, J.   Harry J. Tierney of Bay City, Michigan, was approached by James W. Collen on April 18, 1929, to become surety on a bail bond of $1,500 in order to secure the release of Collen's stepson, who had been arrested at Flint, Michigan, on charges arising out of an automobile accident. Collen claims that Tierney at first agreed to perform this service for $150, but subsequently demanded $300, the amount finally agreed upon.   After telephonic communication with Flint, it was ascertained that Tierney would not be accepted as surety, but that a cash deposit would be required instead. Thereupon Collen and wife, defendants herein, on the same date deeded their home in Bay City to Tierney, who gave them a contract of repurchase, agreeing to reconvey the premises to defendants upon payment of $2,000 on November 29, 1932, with interest at 7 per cent. per annum.   This sum included the $300 charge, the sum of $1,500 required as cash bond, and also a sum slightly in excess of $200 advanced by Tierney to pay a prior mortgage on the property.   Tierney's agent and Collen at once went to Flint, where the amount was deposited and Collen's stepson released.   Evidently the criminal charges were not pressed.   There was some difficulty and delay in obtaining a return of the $1,500, until the attorneys who had represented the stepson were paid their fees by Tierney, upon Collen's direct authorization.   Upon the return of the $1,500 to Tierney, a new contract was given to Collen and his wife, in which the consideration to be paid was placed at $850.   This sum was made up of the balance of $500 due on the former contract, accrued interest at $70 on the former contract, the $200 fee paid to the stepson's attorneys, and a charge of $80 for four trips to Flint.   After default on the part of

defendants, Tierney began suit to foreclose the land contract. Defendants filed an answer and cross-bill in which they alleged the contract to be usurious, and asked that all interest paid by them be credited on the principal, and that plaintiff be required to reconvey the property to them upon receipt of the amounts lawfully due. The trial judge held that the $300 fee was exacted for the furnishing of a bail bond and not for the making of a loan, and that the transaction was therefore not a usurious one. He, however, disallowed the charge of interest on the $1,500 advanced as a cash bond, on the ground that plaintiff had agreed to furnish bail for $300, but he held that this was simply an overcharge, and did not taint the contract with usury.

We agree with the trial court's interpretation of this transaction. The first agreement made between the parties was to furnish bail to the end that defendant Collen's stepson might be released from the Flint jail. This was accomplished when plaintiff furnished a cash bail bond; at this point, the services were performed and the charge agreed upon earned. The taking of a deed of defendants' property and giving them in return a land contract on said property were incidental to and were given for the purpose of securing plaintiff by reason of his having furnished bail. The circumstances surrounding the entire transaction negative the idea of a loan. In the first place, the property only had an assessed valuation of $1,800 and plaintiff was required to pay off a $200 mortgage upon the property as well as deposit $1,500 for cash bail. This was in April, 1929, and at a time when property had an inflated value. Good business judgment would not permit such a loan. We also find that defendants at no time actu-

ally had control of the money nor after its deposit
did plaintiff have any control of it.

· The trial judge was correct in disallowing the
charge of $80 for four trips to Flint. This was part
of the service that plaintiff agreed to perform for
$300. However, the items of money paid for insur-
ance on the property, taxes paid, as well as the costs
of the circuit court commissioner are all proper
charges for which plaintiff is entitled to an account-
ing.

The facts in the instant case do not come within
the rule laid down in *Continental National Bank* v.
*Fleming,* 170 Mich. 624, but rather with the rule as
stated in 21 A. L. R. 900 and approved in *Barras* v.
*Young,* 185 Mich. 496, 512.

"The principle controlling the decision of these
cases is laid down in *Washington Fire Ins. Co.* v.
*Maple Valley Lumber Co.* (1914), 77 Wash. 686 (138
Pac. 553), as follows: 'If a sum in excess of the
statutory limit is paid as a commission or bonus for
a loan, then the transaction is subject to the taint of
usury, but if the sum so paid is for services rendered,
or for profits earned upon a transaction other than
the making of the loan, then the transaction is free
from usury.' "

It is the defendants' claim that the second con-
tract for $850 is a usurious contract and being
tainted with fraud is governed by the principle
enunciated in *Gladwin State Bank* v. *Dow,* 212 Mich.
521, 539 (13 A. L. R. 1233), wherein the court said,
"where a renewal note is given containing and pro-
viding for usurious interest, or where usurious in-
terest is exacted, the defense of usury not only in the
particular note sued upon but in all of its prede-
cessors where it exists, if it exists at all, is available

to the maker as a defense." But in the instant case, we find no usury nor is the same tainted with fraud so far as matters relate to the first contract, whereas in *Gladwin State Bank* v. *Dow, supra,* the excessive interest was charged at the inception of the first transaction. In 3 A. L. R. 877, the general rule is stated as follows:

"It is universally recognized that if a transaction or an obligation is free from usury in its origin no subsequent usurious transaction respecting it can affect it with the taint of usury, the theory being that the question whether a contract is usurious or not must be decided with reference to the time when it was entered into."

See, also, *Richard* v. *Kountze,* 4 Neb. 200.

The decree of the lower court is affirmed, with costs to plaintiff.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.