MANUFACTURERS NATIONAL BANK OF DETROIT v PINK

Docket No. 61470. Submitted January 19, 1983, at Detroit.—Decided
    September 13, 1983.

Dave Pink and Cypora Pink, his wife, executed and delivered to
    the Manufacturers National Bank of Detroit a real estate
    mortgage encumbering approximately 77 acres of undeveloped
    land in Flat Rock, Michigan. That mortgage secured a real
    estate mortgage note also executed and delivered to Manufac-
    turers by both of the Pinks. The note provided for interest at
    one and one-half percent over Manufacturers' prime interest
    rate, as it varied from time to time thereafter. The Pinks
    defaulted on the note. Manufacturers brought suit in Wayne
    Circuit Court seeking foreclosure against the Pinks separately.
    The Court, Patrick J. Duggan, J., granted summary judgment
    for Manufacturers against both of the defendants. The court
    confirmed the subsequent mortgage foreclosure sale and en-
    tered a deficiency judgment for Manufacturers against the
    Pinks jointly and severally. The Pinks appealed, alleging that
    the trial court erred because: (1) a married woman should not
    be held jointly and severally liable on a promissory note which
    she and her husband executed where no consideration passed to
    her separate estate, (2) the trial judge abused his discretion by
    failing to fix an upset price, and (3) the interest rate on the
    loan to defendant Dave Pink was usurious. Held:

1. A married woman can be held jointly and severally liable
    on a promissory note which she and her husband executed even
    though no consideration passed to her separate estate.

2. The trial judge did not abuse his discretion by failing to fix
    an upset price. The trial court did not err in holding that the
    defendants' requests for an upset price were not timely made
    and that the defendants' rights were protected by the redemp-
    tion period and the ability to sell the real estate.

3. The trial court did not err in ruling as a matter of law

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Husband and Wife § 147.
[2] 55 Am Jur 2d, Mortgages § 918.
[3] 45 Am Jur 2d, Interest and Usury §§ 10, 63 et seq.
[4] 45 Am Jur 2d, Interest and Usury § 63 et seq.

that the interest rate on the loan to the defendant Dave Pink was not usurious. Where the interest rate a debtor must pay is tied to an objective standard beyond the control of either party, such as the prime interest rate, the advancing and declining of such standard does not constitute a change in the rate of interest charged for purposes of the prohibition against an increase in such an interest rate. The interest rate charged was not usurious. The obligation was in excess of $100,000 and the bona fide primary security was a lien against real estate which was not a single family residence.

Affirmed.

1. HUSBAND AND WIFE — CONTRACTS — PROMISSORY NOTES.

The constitution provides that a woman has the same right to negotiate a contract as a man; a married woman may be held jointly and severally liable on a promissory note which she and her husband executed even though no consideration passed to her separate estate (Const 1963, art 10, § 1).

2. PROPERTY — FORECLOSURE — UPSET PRICE.

A court may, in its discretion, fix and determine the minimum price at which the real property covered by a mortgage or land contract may be sold at a sale under a forfeiture, foreclosure, or specific performance proceeding (MCL 600.3155; MSA 27A.3155).

3. INTEREST — USURY — INTEREST RATE INCREASES.

The interest rate a debtor must pay, where tied to an objective standard beyond the control of either party, such as the prime interest rate, does not constitute a change in the rate of interest charged where the standard advances or declines for purposes of the statutory prohibition against an increase in the interest rate on the note, mortgage, contract, or other evidence of indebtedness, the bona fide primary security for which is a first lien against real property, a land lease if the tenant owns a majority interest in the improvements thereon, or a land contract (MCL 438.31c[2]; MSA 19.15[1c][2]).

4. USURY — EXCEPTIONS — MORTGAGES.

Prior to January 1, 1983, the parties to a note, bond, or other indebtedness of $100,000 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, could agree in writing for the payment of *any* rate of interest (MCL 438.31c[10]; MSA 19.15[1c][10]).

*Bodman, Longley & Dahling* (by *Alfred C. Wortley, Jr.,* and *David W. Hipp),* for plaintiff.

*Daniel B. Burress,* for defendants.

Before: V. J. Brennan, P.J., and Gribbs and C. J. Hoehn,* JJ.

Per Curiam. Prior to 1974, defendant Dave Pink was indebted to plaintiff Manufacturers National Bank of Detroit on an unsecured debt. In 1974, the plaintiff demanded security for a renewal of the said loan and was given a mortgage on 77.67 unimproved acres of real estate in Flat Rock. The mortgage sum was $250,000. Defendant Cypora Pink, Dave Pink's wife, was required to sign the mortgage as a condition of the loan extension agreement on the part of the plaintiff. No separate consideration ran to Cypora Pink's estate.

On June 15, 1979, the obligation was again renewed, and the interest rate was agreed to be one and one-half percent above plaintiff's prime rate but not less than eight and one-half percent.

Defendants defaulted on the payment of their obligation and a complaint for foreclosure was filed by the plaintiff in February, 1980, against both defendants. Plaintiff proceeded separately against the defendants and eventually arrived at a judgment of foreclosure under which the property was sold. The amount owed by defendants to the plaintiff, as established by the judgment, was $188,202.74. At the foreclosure sale, plaintiff purchased the real property for the sum of $79,939.14 resulting in a deficiency balance of $108,263.60.

The trial court affirmed the mortgage foreclosure sale and awarded a deficiency judgment

* Circuit judge, sitting on the Court of Appeals by assignment.

jointly and severally, against both defendants. The defendants appeal from that final order, raising the following questions:

I. Did the Constitution of 1963, art 10, § 1 abrogate the rights of the married woman's act, MCL 557.1 *et seq.;* MSA 26.161 *et seq.,* such that a married woman can be held jointly and severally liable on a promissory note which she and her husband executed and from which no consideration passed to her separate estate?

II. Did the trial judge abuse his discretion in failing to set the minimum price at which the property could be sold at the foreclosure sale?

III. Did the trial judge err in ruling as a matter of law that the interest rate on the loan to defendant Dave Pink was not usurious?

These issues will be considered *seriatim.*

I. *A married woman can be held jointly and severally liable on a promissory note which she and her husband executed even though no consideration passed to her separate estate.*

This Court has adopted contrary positions on whether Const 1963, art 10, § 1 supersedes the married woman's separate property act. MCL 557.1; MSA 26.161. *City Finance Co v Kloostra,* 47 Mich App 276; 209 NW2d 498 (1973), holds that the married woman's act was not superseded by the Constitution of 1963. *Michigan National Leasing Corp v Cardillo,* 103 Mich App 427; 302 NW2d 888 (1981), holds that the woman's property act is superseded by the Constitution of 1963. See, also, *Schenck v Seamon,* 124 Mich App 438; 335 NW2d 63 (1983).

The requirement that a separate consideration pass to a married woman's estate in order for her to be liable upon contract is not, strictly speaking, one of the common-law disabilities of coverture.

Nevertheless, the language of the constitutional provision cleary expresses an intent that women should have the same right to negotiate and contract as men. We hold with *Michigan National Leasing Corp v Cardillo, supra,* that a married woman can be bound by contracts executed by her and her husband even though no consideration passes to her separate estate.

II. *The trial judge did not abuse his discretion by failing to fix an upset price.*

During the July 10, 1981, oral argument on plaintiff's motion for summary judgment against Cypora Pink, an oral request was made to the court to fix an upset price of at least $250,000. The request was not supported by affidavits or evidence.

The court's right to set an upset price is grounded in MCL 600.3155; MSA 27A.3155:

"In any forfeiture, foreclosure, or specific performance case based upon a mortgage on real estate or land contract the court *may* fix and determine the minimum price at which the real property covered by the mortgage or land contract may be sold at the sale under the forfeiture, foreclosure, or specific performance proceedings." (Emphasis added.)

The trial judge held that the request for an upset price was not timely made and that defendants' rights were protected by the redemption period and the ability to sell the real estate. We agree. *Mutual Benefit Life Ins Co v Wetsman,* 277 Mich 322, 333; 269 NW 189 (1936).

Defendant, on September 11, 1981, also made a motion for an evidentiary hearing to establish the value of the property so that the court could make an upset price. This the court refused to do since summary judgment had already been entered

against the defendant Dave Pink and since the request of Cypora Pink was not accompanied by supporting evidentiary affidavits or testimony. We find no error.

III. *The trial court did not err in ruling as a matter of law that the interest rate on the loan to the defendant Dave Pink was not usurious.*

Defendants contend that the interest rate of one and one-half percent above plaintiff's prime rate, but not less than eight and one-half percent, violates stricture of the statute against increasing the interest for any reason whatsoever. Defendants argue that, when the prime rate rises, the plaintiff will have increased the interest rate to defendants.

"For the period ending on December 1, 1982, it is lawful for the parties to a note, bond, or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon, or the parties to a land contract, to agree in writing for the payment of any rate of interest, but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be *increased for any reason whatsoever.*" MCL 438.31c(2); MSA 19.15(1c)(2). (Emphasis supplied.)

First, we hold that plaintiff's prime interest rate is controlled by the market. We hold that the reference to the plaintiff's prime interest rate is a reference to an objective standard outside of the control of the parties. While a variation in the prime interest rate may result in defendants paying a greater amount of interest, nonetheless, the interest rate remains the same, to-wit: one and one-half percent above the prime rate.

In our recent financial history, many financial institutions have faced bankruptcy by being tied to

a fixed interest rate in the face of an advancing prime rate. The device of tying the interest rate to the prime rate was an effort to avoid this difficulty. Now, in the face of a declining prime interest rate, such a clause would be advantageous to the customers of the financial institution. This Court must be aware of the commercial practices of the day. Notice is taken of the large amount of commercial paper that has been tied to the interest rate and the disastrous effect of holding such paper violative of the above-cited statute. We hold that, where the interest rate is tied to an objective standard beyond the control of either party, the advancing or declining of such standard and, ergo, the amount of interest which the debtor must pay, does not constitute a change in the *rate of interest* charged and hence, does not violate the cited statute.

Defendant also contends that the interest rates charged were usurious; however, the trial court found, and this Court agrees, that the security for the note was primarily a real estate obligation.

"For the period ending on December 1, 1982, the parties to a note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, may agree in writing for the payment of *any* rate of interest." MCL 438.31c(10); MSA 19.15(1c)(10). (Emphasis added.)

The restriction against increased interest rates in subsection 2 does not apply to subsection 10. *Kansas City Life Ins Co v Durant,* 99 Mich App 754, 759; 298 NW2d 630 (1980). The obligation in the instant case was in excess of $100,000, and the bona fide primary security was a lien against real

estate which was not a single family residence. Consequently, subsection 10 was applicable, and the interest rate charged was not usurious.

Affirmed. Costs to plaintiff.