STILLMAN v GOLDFARB

Docket No. 96047. Submitted October 14, 1987, at Detroit. Decided October 17, 1988.

Rochelle Stillman, co-trustee of the Al Wein Trust and either trustee or co-trustee of the Beatrice Stillman Trust and the Rochelle Stillman Trust, Lawrence Davidson, co-trustee of the Al Wein Trust, Jeffrey Stillman and Michael Stillman brought an action against Charles Goldfarb, The Goldfarb Bonding Agency, Inc., The Lehigh Agency, a New Jersey corporation, and others in the Oakland Circuit Court to recover bond premiums, travel expenses and interest on deposited collateral on a $300,000 appeal bond for Marshall Stillman, who was convicted of conspiracy to import and distribute heroin. The money for the premium and the travel expenses came from the Rochelle Stillman Trust. The collateral came from all three trusts and was deposited with the Lehigh Agency under an agreement that title to the collateral would remain in Jeffrey and Michael Stillman until the bond was forfeit. The arrangements for the bond were made in Michigan, whereafter Charles Goldfarb traveled to Pennsylvania to post the bond, underwritten by a Pennsylvania and a New Jersey insurer. The court, Fred M. Mester, J., granted summary disposition for defendants on plaintiffs' claims of illegal contract under Pennsylvania and Michigan law, dismissed all defendants except the Goldfarbs and their agency and held that plaintiffs had standing, Michigan law governed, plaintiffs were not entitled to recover the interest earned on the deposited collateral and an issue of fact existed concerning the proration of a premium. Plaintiffs appealed and defendants cross-appealed.

The Court of Appeals *held:*

1. The trusts were not proper parties because the defendants did not owe them any contractual duties.

REFERENCES

Am Jur 2d, Contracts §§ 15 *et seq.*

Reservation of right to terminate, rescind, or modify contract, as against third-party beneficiary. 44 ALR2d 1270.

2. The individual plaintiffs were not proper parties with respect to any action to recover excessive premiums paid.

3. The individual plaintiffs were proper parties with respect to the collateral and the interest on the collateral.

4. The court properly found that Michigan law applied.

5. The court erred in finding that the individual plaintiffs could not recover the interest on the deposited collateral.

6. Travel expenses may be separately contracted for and when that is done travel expenses are not included as fees in determining the statutory maximum fee.

7. The Lehigh Agency was a proper party.

Affirmed in part, reversed in part and remanded with instructions.

1. ACTIONS — REAL PARTY IN INTEREST — COURT RULES.

An action may only be prosecuted in the name of the real party in interest; a real party in interest is one who is vested with the right of action on a given claim regardless of who has the beneficial interest (MCR 2.201[B]).

2. CONTRACTS — ACTIONS — STANDING — THIRD-PARTY BENEFICIARIES.

While a mere beneficial interest in a contract is not enough to confer standing, a party having the status of a third-party beneficiary to a contract has the same right to enforce that contract as the promisee.

3. CONTRACTS — CHOICE OF LAWS — JUDICIAL CONSTRUCTION.

The validity and construction of a contract is controlled and is to be determined by the law of the situs, or place where the contract was entered into; every presumption is allowed in favor of a legal purpose and a contract will not be adjudicated to be illegal when it is capable of a construction which will hold it and make it valid; when a contract is open to construction, the court's duty is to determine, if possible, the parties' true intent by considering the contract language, its subject matter, and the circumstances surrounding the making of the agreement.

4. BAIL — FEES — INTEREST ON COLLATERAL — TRAVEL EXPENSES.

A statute provides that a bail bondsman may not charge or receive more than ten percent of the face value of the bond per year or part of a year; therefore, a bondsman may not keep the interest earned on any collateral deposited to secure a bond if to do so would bring his compensation to a sum above that

allowed; travel expenses are not prohibited as fees in excess of the ten percent statutory maximum (MCL 750.167b[3]; MSA 28.364[2][3]).

*Faintuck, Schwedel & Wolfram* (by *William G. Wolfram*), for plaintiffs.

*Norman L. Zemke, P.C.* (by *Norman L. Zemke*), for defendants.

Before: WAHLS, P.J., and SAWYER and C. W. SIMON, JR.,* JJ.

C. W. SIMON, JR., J. In this action to recover appeal bond premiums and interest earned on the cash collateral deposited with defendant Lehigh Agency, plaintiffs appeal as of right from a final order of the Oakland Circuit Court granting partial summary disposition in favor of defendants. Defendants cross-appeal from the court's decision that plaintiffs had standing to bring this action.

The material facts are not in dispute. In March, 1981, Marshall Stillman was convicted in a federal district court in Pennsylvania of conspiracy to import and distribute heroin. The federal court set a $300,000 appeal bond. Marshall Stillman's attorney contacted defendant Goldfarb Bonding Agency to arrange for the bond. Beatrice and Rochelle Stillman, the mother and wife respectively of Marshall Stillman, thereafter went to the Goldfarb Agency to negotiate the terms of the bond. On May 9, 1981, an agreement was reached providing for a $30,000, or ten percent, annual premium. Additionally, Beatrice and Rochelle Stillman signed a promissory note made payable to defendants Charles and Irwin Goldfarb, who were doing business in Michigan as the Goldfarb Agency.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Beatrice Stillman also executed a quitclaim deed as collateral on property located in Michigan.

The $30,000 premium was paid upon the bond agreement's execution. In addition, $5,000 was deposited with the Goldfarb Agency for anticipated out of pocket and air travel expenses necessary to get the bond filed as soon as possible. It appears that the $35,000 was paid with funds from the plaintiff Rochelle Stillman trust.

Originally, it was anticipated that the bond would be posted in a federal court in Michigan, then transferred to the federal court in Pennsylvania. After the Pennsylvania federal court rejected this arrangement, Charles Goldfarb traveled to Pennsylvania to post the bail bond. Both Marshall Stillman and Charles Goldfarb signed the bail bond, which permitted Marshall Stillman to travel to Oakland and Wayne Counties in Michigan and set forth the terms of forfeiture. The $300,000 bail bond was actually posted through two bonds in the amount of $150,000 each written by defendants International Fidelity Insurance Company, a New Jersey corporation, and Allegheny Mutual Casualty Company, a Pennsylvania insurer. The bonds were issued through their agents, defendants Goldfarb Agency and the Lehigh Agency, a New Jersey bonding company.

After Marshall Stillman was released on bond, he returned to Michigan. Marshall Stillman subsequently agreed to substitute $100,000 cash for the quitclaim deed executed by his mother as collateral. The source of funds for the collateral was the three plaintiff trusts: the Al Wein Trust (with Rochelle Stillman and Lawrence Davidson as co-trustees), the Beatrice Stillman Trust; and the Rochelle Stillman Trust. The collateral was placed with the Lehigh Agency in two installments. The

first $50,000 was paid in April, 1981; the second $50,000 was paid in August, 1981.

In between these two payments, in a letter dated April 27, 1981, Marshall Stillman's attorney set forth the terms of the agreement reached by Marshall Stillman, the Goldfarb Agency and the Lehigh Agency on the placement of the collateral and the continuation of the bond. The letter was signed by Charles and Irwin Goldfarb and Marshall Stillman. The execution of this agreement took place in Michigan. It specified that premiums after the first year would be $5,000 for each sixty-day period, that the interest on the cash collateral would be received and held by the Lehigh Agency, and that title to the cash collateral would remain in the Stillman children's names until and unless Marshall Stillman forfeited the bond. Further, in August, 1981, the property held as collateral was quitclaimed back to Beatrice Stillman.

The $5,000 premiums needed to continue the bond after the first year were paid to the Goldfarb Agency by checks drawn on the Beatrice Stillman Trust and the Rochelle Stillman Trust. The bail bond remained in effect until July 11, 1983, when Marshall Stillman's conviction was affirmed. On August 31, 1983, the Lehigh Agency returned the $100,000 cash collateral to Marshall Stillman's son, plaintiff Jeffrey Stillman, but retained the $26,487.34 interest earned on that collateral.

On November 6, 1985, plaintiffs commenced this action against the two insurers, Fidelity and Allegheny, and their agents, the Goldfarb and Lehigh Agencies, as well as two individual defendants, Charles and Irwin Goldfarb. Plaintiffs, which included the three trusts that paid the premiums and provided the funds for the collateral and Marshall Stillman's two sons, Jeffrey and Michael Stillman, alleged that defendants exacted premi-

ums and charges for posting the bond in excess of statutory limits, improperly retained the interest on the cash collateral, and improperly retained part of the last $5,000 premium paid. Both parties subsequently moved for summary disposition, contending that there was no genuine issue of material fact. Plaintiffs claimed that Pennsylvania law governed the bonding agreement; defendants claimed that plaintiffs lack standing to bring this action. The trial court ruled that: (1) plaintiffs had standing; (2) Michigan law governs; (3) plaintiffs were not entitled to recover the interest earned on the cash collateral; and (4) a factual question existed as to plaintiffs' entitlement to a prorated return of the last premium. Accordingly, on October 15, 1986, the trial court granted summary disposition in favor of defendants under MCR 2.116(C)(8) as to Count I (alleged illegal contract pursuant to Pennsylvania law) and under MCR 2.116(C)(10) as to Count II (alleged illegal contract under Michigan law). Further, all defendants were dismissed from the action except for Charles and Irwin Goldfarb and the Goldfarb Agency.

On appeal, we first consider defendants' claim that plaintiffs lacked standing to bring this action. Defendants argue that Marshall Stillman, as the person who executed the April 27, 1981, agreement, was the only real party in interest. We disagree.

Initially, we note that plaintiffs' reliance on *Citizens for Pretrial Justice v Goldfarb,* 415 Mich 255; 327 NW2d 910 (1982), for their argument is misplaced. Although *Goldfarb* did hold that only persons who had paid such a premium fee are entitled to bring an action to recover the excess charge, the interested parties in *Goldfarb* were both payers of the fee and parties to the contracts. The *Goldfarb* Court was not faced with the factual

circumstances here. Nor was the Court asked to decide whether a payer who is not a party to the bond agreement and is not the person "for whom" the bond was purchased has standing. Plaintiffs' claims in this case are based on two allegedly illegal contracts and, thus, the central issue is whether plaintiffs may challenge the validity of those contracts.

It is clear that an action must be prosecuted by the real party in interest. MCR 2.201(B). A real party in interest is one vested with the right of action on a given claim, although the beneficial interest may be in another. *Weston v Dowty,* 163 Mich App 238, 242; 414 NW2d 165 (1987). This standing doctrine recognizes that litigation should be commenced only by a party having an interest that will assure sincere and vigorous advocacy. *Saginaw Public Libraries Bd of Library Comm'rs v Judges of the 70th District Court,* 118 Mich App 379, 385; 325 NW2d 777 (1982), lv den 417 Mich 974 (1983). Here, plaintiffs consist of three trusts and two individuals. The trusts paid the premiums set forth in the March 11 and April 27, 1981, agreements and provided funds for the cash collateral. The problem, however, is that none of the trusts were parties to the bonding agreement, and there is no indication in the record that the trusts brought this action as assignees of the contracting parties' causes of actions or that the agreements were executed by any of the Stillmans in a trustee capacity. The trusts merely provided the funds for the premiums and collateral. Since defendants did not owe any contractual duty to the trusts, the trial court erred in finding that they were real parties in interest. *Weston, supra,* pp 241-243.

The standing of the two individual plaintiffs is similarly lacking with regard to any action to recover allegedly excessive premiums paid. Their

status, at best, with regard to premium payments was merely that of trust beneficiaries. Their standing to bring suit to recover interest received by the Lehigh Agency on the cash collateral is more problematic. The interest clause of the April 27, 1981, agreement provided that "title of said money will remain in the Stillman childrens' names until and unless Mr. Stillman forfeits the bonds . . . ." Moreover, the agreement provided that the Stillman children could obtain the cash collateral on demand after the bail bond was canceled in the federal court. Accordingly, it appears that the individual plaintiffs had at least a beneficial interest in the agreement.

While a mere beneficial interest in a contract is not enough to confer standing, *Weston, supra,* a party having the status of a third-party beneficiary to a contract has the same right to enforce that contract as the promisee. *Riemersma v Riemersma,* 29 Mich App 485, 487; 185 NW2d 556 (1971); MCL 600.1405; MSA 27A.1405. An objective test is applied to ascertain whether a plaintiff is a third-party beneficiary of the contract. *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425, 430; 357 NW2d 62 (1985), lv den 422 Mich 911 (1984), and see *Spiklevitz v The Markmil Corp,* 136 Mich App 587, 592; 357 NW2d 721 (1984). Since defendant Lehigh Agency undertook to pay the cash collateral directly to Marshall Stillman's children upon demand after the bail bond was properly canceled, we conclude that the individual plaintiffs were the real parties in interest with regard to the collateral. *Spiklevitz, supra;* MCL 600.1405(1); MSA 27A.1405(1).

A determination that the three trust plaintiffs lacked standing makes it unnecessary to address the two issues they raise. We shall, however, con-

sider plaintiffs' issues as they pertain to the individual plaintiffs, Jeffrey and Michael Stillman.

The individual plaintiffs first claim that the trial court erred in finding that the April 27, 1981, agreement was governed by Michigan, rather than Pennsylvania law. We disagree.

The validity and construction of a contract is controlled and is to be determined by the law of the situs, or place where the contract was entered into. *Rubin v Gallagher,* 294 Mich 124, 128; 292 NW 584 (1940). Every presumption is, however, allowed in favor of a legal purpose and a contract will not be adjudicated to be illegal when it is capable of a construction which will hold it and make it valid. *Roland v Kenzie,* 11 Mich App 604, 611; 162 NW2d 97 (1968). When a contract is open to construction, the court's duty is to determine, if possible, the parties' true intent by considering the contract language, its subject matter, and the circumstances surrounding the making of the agreement. *Damerau v C L Rieckhoff Co, Inc,* 155 Mich App 307, 312; 399 NW2d 502 (1986); *Stroud v Glover,* 120 Mich App 258, 262; 327 NW2d 462 (1982).

In the present case, the agreement provided for premium payments and collateral. It is not disputed that the ten percent premium term was valid under Michigan law, MCL 750.167b(3); MSA 28.364(2)(3), but excessive and invalid under Pennsylvania law. Additionally, the terms of the agreement were negotiated and agreed to in Michigan. The only factors linking the agreement to Pennsylvania were the fact that Charles Goldfarb traveled to Pennsylvania to post the bail bond in federal court and the fact that Allegheny and Fidelity both conducted business in Pennsylvania. The trip was necessary only because the Pennsylvania federal court rejected the parties' attempt to post the

bond in a federal court in Michigan. From the circumstances as a whole and the express terms of the bond agreement, it is clear that the parties intended to make a valid bond agreement under Michigan law. Thus, the trial court did not err in determining that Michigan law should govern the terms of the agreement.

Next, we consider the individual plaintiffs' contention that the trial court erred in ruling that they could not recover the interest on the collateral. The pertinent Michigan statute, MCL 750.167b(3); MSA 28.364(2)(3), provides in part:

It shall be lawful to charge for executing any bond in a criminal case, but no person engaged in the bonding business . . . either directly or indirectly, shall charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding, which shall not exceed 10% of the face value of the bond for a 12 month period or any part thereof, from any person for whom he has executed bond, for any other service whatever performed in connection with any indictment, information or charge upon which the person is bailed or held.

In *Goldfarb, supra,* our Supreme Court construed this statute as not intending to prohibit bondsmen from taking a security interest in collateral in addition to the ten percent premium fee. The majority in *Goldfarb,* however, did not discuss whether a bondsman could permanently retain interest on cash collateral where the bondsman was already receiving the statutory maximum of ten percent.

The purpose of MCL 750.167b(3); MSA 28.364(2)(3) is to authorize a fee for executing a bond and to limit the amount of the fee. 415 Mich 276. To accept defendants' argument that only the

principal deposited as collateral need be returned, while permitting a bonding agency, or a joint agency venture as in this case, to permanently retain the interest earned on that collateral, would be contrary to the clear legislative intent that no person engaged in the bonding business "either directly or indirectly . . . charge, accept or receive any sum of money or property" exceeding the maximum ten percent fee authorized by the statute. Giving every presumption in favor of the validity of the bonding agreement, as well as the language of the April 27, 1981, written agreement and the circumstances attending the placement of the $100,000 cash collateral with defendant Lehigh Agency, we conclude that the true intent of the agreement was only that the Lehigh Agency receive and hold any interest earned, like the principal sum of $100,000 itself, as available collateral.

Lastly, the instant plaintiffs contend that the $5,000 forwarded to defendants for "expenses" should be similarly prohibited as a direct charge in excess of the ten percent statutory fee.

In *Tierney v Collen,* 272 Mich 200, 203; 261 NW 298 (1935), our Supreme Court held that a bondsman could not charge his client $80 for travel expenses incurred in posting bond in another city. Our Supreme Court found that the bondsman's travel expenses were part of the service that he agreed to perform for $300.

In the instant case, defendants did not agree that the travel expenses involved in posting bond were to be performed as part of defendants' services. On the contrary, plaintiffs and defendants agreed that defendants' travel expenses would be supplied by plaintiffs in addition to a ten percent bonding fee. Furthermore, defendants made no profits from the expense money and returned the unused portion of the expenses. Thus, in the in-

stant case, expenses necessitated by defendants' travel in posting bond in another state should not be prohibited as "fees" in excess of the ten percent statutory maximum fee.

In view of our resolution of these issues, we do not address defendants' argument pertaining to the dismissal of the two defendant insurers (Fidelity and Allegheny). We do, however, reject their argument that the Lehigh Agency was not a proper defendant in this action. The fact that the Lehigh Agency accepted the cash collateral, alone, was sufficient to raise a factual question as to the nature of the Lehigh Agency's undertaking. Since no genuine issue of material fact has been shown and the record reveals that the Lehigh Agency was an active participant in the bond negotiations and agreed to accept and hold the cash collateral, plaintiffs can maintain an action against the agency for recovery of the interest earned on that cash collateral. Finally, we decline to review defendants' contention that they are entitled to a setoff of $15,000 since this counterclaim was not considered or decided by the trial court. See *Michigan Mutual Ins Co v American Community Mutual Ins Co,* 165 Mich App 269, 277; 418 NW2d 455 (1987).

Affirmed in part and reversed in part. The case is remanded to the trial court for entry of an order requiring the defendant Lehigh Agency to pay the $26,487.34 interest earned on the cash collateral to plaintiffs Jeffrey and Michael Stillman.