PATRICK v SHAW

Docket No. 272692. Submitted April 4, 2007, at Detroit. Decided April 10, 2007, at 9:10 a.m. Leave to appeal sought.

Philip J. and Marie T. Patrick brought an action in the Gratiot Circuit Court against Randall and Hillary Shaw and others, alleging usury and breach of contract. The Shaws counterclaimed for judicial foreclosure. The dispute involved a balloon mortgage loan owed by the Patricks to the Shaws that was extended by agreement following a default by the Patricks. The extended loan carried a higher interest rate than the original rate. The court, Randy L. Tahvonen, J., summarily dismissed the Patricks' claims, ruling that they had failed to prove damages for the alleged breach of contract and that usury is available only as a defense. The court also granted judicial foreclosure, but determined the interest rate of the extended loan to be usurious and therefore set the redemption amount to reflect the interest rate of the original loan agreement. In addition, the court awarded the Shaws late fees and attorney fees. The Patricks appealed, and the Shaws cross-appealed.

The Court of Appeals *held*:

1. The trial court properly dismissed the Patricks' breach of contract claim. Both sides were in breach of contract. The original loan agreement provided for a right to refinance subject to several conditions, three of which were that there be no lien on the property, that the Patricks make a written request 45 days in advance, and that the Shaws advise the Patricks of the right to refinance, including contact information for the transmission of the written request to refinance, 60 days in advance. Both sides failed to abide by these requirements. However, the Patricks' breach was more significant in that a lien was placed on the property for their nonpayment of taxes and there was no evidence that the Patricks could have cured that defect so as to take advantage of the right to refinance but for the Shaws' failure to provide 60 days' notice. The trial court correctly determined that the Patricks failed to establish damages.

2. The increased interest rate violated MCL 438.31c(2), which provides in part that a "note, mortgage, contract or other evidence

of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason." Although the statutory anti-escalation provision permits parties to specify a variable interest rate tied to an objective standard beyond either party's control, the higher interest rate was not tied to any factor beyond the parties' control but, rather, was specified by the Shaws.

3. Michigan's usury act, MCL 438.1 *et seq.*, is not preempted by the Depository Institutions Deregulation and Money Control Act (DIDMCA), 12 USC 1735f-7a(a), or by the Alternative Mortgage Transaction Parity Act (AMTPA), 12 USC 3803(c). The DIDMCA preempts state laws expressly limiting mortgage home loan interest rates. MCL 438.31c(2) does not restrict any interest rate parties may agree to; it only requires parties to adhere to whatever interest rate they agreed to at the outset. The AMTPA concerns loan originations and has no preemptive effect on the application of MCL 438.31c(2) on the usurious loan extension involved in this case.

4. The trial court did not err in allowing the Shaws to charge interest after determining that the loan extension was usurious. The rule is that if a transaction or an obligation is free from usury in its origin, no subsequent usurious transaction (such as the loan extension in this case) can affect it with the taint of usury. The trial court correctly set the original, nonusurious interest rate as the interest rate for redemption. For the same reason, MCL 438.32, governing forfeiture of usurious interest, does not preclude the Shaws from charging late fees or from being awarded reasonable attorney fees as determined by the trial court.

Affirmed.

1. Mortgages — Variable Interest Rates — Usury.

The statute that provides that a note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason does not prohibit parties to a mortgage loan to specify an interest rate that fluctuates with an objective standard beyond the control of either party (MCL 438.31c[2]).

2. Mortgages — Usury.

If a transaction or obligation is free from usury in its origin, no subsequent usurious transaction respecting it can affect it with the taint of usury; a mortgage loan that is not usurious at inception but usurious upon extension may, upon default of the borrower, be redeemed with interest set at the original rate because the lender does not forfeit interest earned at the original

rate; nor does such a lender forfeit the right to late fees or reasonable attorney fees awardable at foreclosure (MCL 438.31c[2], 438.32).

*Redman Charlip PLLC* (by *Bruce R. Redman* and *Matthew B. Walker*) for Philip J. and Marie T. Patrick.

*Carolyn Cohen* for Randall and Hillary Shaw and Borrowers Network LLC.

Before: WILDER, P.J., and SAWYER and DAVIS, JJ.

DAVIS, J. This case arises out of a first mortgage held by Hillary and Randall Shaw on property owned by Philip J. and Marie T. Patrick. The original loan was a "balloon loan," wherein the monthly payments only covered interest and the principal was due at maturity. The loan provided a right to refinance at an interest rate based on the prevailing market rate, provided certain conditions were met. The Shaws failed to provide the Patricks with 60 days' notice as required by the loan, and at maturity the Patricks were in default on their property taxes in violation of one of the conditions of refinancing. The parties eventually agreed to extend the loan at higher, and increasing, interest rates. The Patricks eventually stopped paying and commenced this suit against the Shaws, Pines Investment Corporation, Pines Mortgage Corporation, Lee Pines,[1] and Borrowers Network Trust, LLC, in a preemptive attempt to avoid foreclosure, alleging, in relevant part, usury and breach of contract. The Shaws counterclaimed for judicial foreclosure. The trial court summarily dismissed the breach of contract claim for failure to prove damages and the complaint sounding in usury, ruling that usury

[1] The "Pines defendants" were dismissed without prejudice by stipulation on April 10, 2006. It does not appear that they ever participated in this case in any significant way.

is available only as a defense. The trial court granted judicial foreclosure but found the increased interest rate charged in the loan extension agreement usurious. The trial court therefore set the redemption amount as if the original interest rate had been charged. The trial court also awarded the Shaws late fees and attorney fees. The Patricks appeal, the Shaws cross-appeal, and we affirm.

A grant or denial of summary disposition is reviewed de novo to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo as a question of law the proper interpretation of a contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). The fundamental goal is to honor the intent of the parties. *Id.* at 473. We likewise review de novo questions of statutory construction. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003), amended on other grounds 468 Mich 1216 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). We review for an abuse of discretion the trial court's decision whether to award attorney fees and its determination of the reasonableness of the fees. *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). The abuse of discretion standard applies where there is not a single correct outcome, so the trial court should be affirmed as long as the outcome is reasonable and principled. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

The parties each accuses the other of having breached the contract first. Both parties tacitly admit breaching their agreement. The structure of the contract provides in Section 2 a "conditional right to refinance" subject to several conditions, two of which are relevant. First, no lien may exist against the property, which the Patricks admittedly violated by being in default on their taxes. Second, the borrower must make a written request 45 days in advance, "as provided in Section 5." The Patricks did not transmit this written request. On the other side of the ledger, Section 5 explicitly requires the note holder to advise the borrower of the right to refinance, including contact details for transmission of the written request, 60 days in advance. The Shaws admittedly failed to perform this obligation. The way the contract is structured, it is mandatory for the note holder to send notice *before* the borrower is required to comply with the conditions of the right to refinance. The Shaws' attempt to excuse their failure by parsing one sentence in a torturous manner to conclude that the Patricks were required not to be in default on their taxes at the time the notice was to be sent.[2] We find it clear that the Shaws breached the contract first, and their interpretation of the contract's requirements is neither rational nor fair.

Even though the Shaws breached the contract first and substantially, we agree with the trial court's con-

---

[2] "Note Holder will also advise [the borrower] that [the borrower] may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met." The last antecedent of "if the conditions in Section 2 above are met" is "may exercise the Conditional Refinancing Option." Logically, therefore, the conditions of Section 2 are precedent to exercising the option, not transmitting the advice. Also, as discussed, the Shaws' interpretation is incompatible with the clear dictates of the contract that they provide the Patricks with details of where to send the written request.

clusion. The Patricks' contention that their own breach, being in default on their taxes, was not substantial is erroneous. Aside from being a clear violation of a condition precedent to the right to refinance, a tax default can result in forfeiture of the property entirely. We therefore disagree that this was an insignificant breach. We further find a complete lack of evidence that the Patricks would have cured the default in time to take advantage of the right to refinance but for the Shaws' failure to send them the 60 days' notice. Therefore, the Shaws' breach was ultimately irrelevant to whether the Patricks could have taken advantage of the right to refinance. Accordingly, the damages the Patricks allege they suffered as a result of the failure to send notice are not supported by the evidence. The trial court properly dismissed the breach of contract claim.

The Patricks' allegation of usury arises out of the first sentence of MCL 438.31c(2), which provides that a "note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason." The parties agree that the loan, as it was originally entered into, was not usurious, and our analysis of the relevant law leads to the same conclusion. An interest rate to be charged for a right to refinance computed on the basis of a then-prevailing market rate could potentially be higher than the original rate. However, this is perfectly legal. This Court has held that the anti-escalation provision permits parties to a note of indebtedness to specify that the interest rate may be tied to the prime market interest rate; "where the interest rate is tied to an objective standard beyond the control of either party" any fluctuations in the standard do "not constitute a change in the *rate of interest* charged." *Manufacturers Nat'l Bank of Detroit v Pink*, 128 Mich App 696, 702; 341 NW2d 181 (1983) (emphasis in original).

Moreover, this Court has held that a "balloon note" loan arrangement would not be usurious just because the parties fully expected the borrowers to be unable to pay off the balance owing at its expiration without obtaining new financing, which might be at a higher interest rate. *Barck v Grant State Bank,* 137 Mich App 440, 443-445; 357 NW2d 872 (1984).

However, *Barck* was also premised on *Manufacturers Nat'l Bank of Detroit,* and the holding was strongly indicative that the touchstone was whether the parties had any control one way or the other of the future interest rate. In other words, specifying the future interest rate at the prime market rate *might* impose on the borrower a higher interest rate, but it *might* also provide the borrower with a lower one. At the same time, if a borrower fails to pay the debt, the borrower is always free to seek a new loan. However, the significant fact in this case is that the loan was neither refinanced nor replaced but, rather, the *existing loan* was *extended at a higher rate.* This increase was not tied to factors beyond the parties' control but, rather, was explicitly specified by the Shaws and referred to as an "extension." The Shaws contend that the Patricks requested the extension, but the letter written by Philip Patrick ostensibly requesting the extension is dated after the fax transmission from Randall Shaw specifying the extension terms he would find acceptable. The original note, which did not specify any problematic increase, would not have been usurious, but the parties subsequently changed the terms—in "other evidence of indebtedness"—to provide for an interest rate above "the rate of interest initially effective." This increase therefore violates MCL 438.31c(2).

The Shaws contend that Michigan's usury act, MCL 438.1 *et seq.,* simply does not apply because it is pre-

empted by federal law; specifically, § 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), 12 USC 1735f-7a(a), and the Alternative Mortgage Transaction Parity Act (AMTPA), 12 USC 3803(c). We disagree. Whether federal law preempts a state law is dependent on statutory interpretation and is reviewed de novo. *Konynenbelt v Flagstar Bank, FSB*, 242 Mich App 21, 27; 617 NW2d 706 (2000). Congress is strongly presumed not to have preempted state law, so preemption will only be found where Congress has clearly and unequivocally indicated an intent to do so. That intent, however, may be express or implied. *Id.*, 25-26. Judicial construction of a statute is not permitted where the language is clear and unambiguous. *Nelson v Assoc Financial Services Co of Indiana, Inc*, 253 Mich App 580, 589; 659 NW2d 635 (2002). If construction is necessary, all parts of the statute should be read together and as a whole, considering the purpose of the statute and the harm it is designed to remedy, and construed reasonably to best accomplish that purpose. *Id.* The primary dispositive factor in analyzing federal preemption is the purpose of Congress. *Id.* at 594.

This Court has decided that 12 USC 1735f-7a did not preempt state regulation of prepayment penalty charges under MCL 438.31c(2)(c). *Nelson, supra* at 593-597. This is not directly applicable to increasing interest rates beyond the rate initially agreed on. However, this Court analyzed the purpose of 12 USC 1735f-7a and it relied on other cases that deemed highly significant that the DIDMCA preempted state laws *expressly* limiting the rate of interest. *Nelson, supra* at 594-596. The DIDMCA was intended to prevent states from artificially restricting first mortgage home loan interest rates to below market rates. *Id.* The provision here contains no limitation on the initial interest rate

and no express limitation on a future interest rate. The DIDMCA was particularly *not* intended to preclude any other protections a state might wish to extend to borrowers. *Nelson, supra* at 595-596. MCL 438.31c(2) does not restrict the interest rate parties may agree to, and although it restricts the parties from agreeing to explicit increases later, it does not prevent the interest rate from being increased on the basis of the prevailing market rate. MCL 438.31c(2) does *not* impose an impermissible "ceiling" on interest rates, it only requires parties to adhere to whatever interest rate they agreed to at the outset unless the market rate increases, in which case the interest rate may increase along with the market rate. MCL 438.31c(2) is not preempted by 12 USC 1735f-7a.

12 USC 3803(c) is entitled "Preemption of State constitutions, laws or regulations," and it unambiguously provides that "[a]n alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation." The loan here appears to satisfy the definition of an "alternative mortgage transaction," because it is secured by residential real property, it provides for the interest rate to be charged, and as a "balloon loan," under which the debt matures with only the interest paid and not the principal, it presumably matures "at the end of an interval shorter than the term of the amortization schedule." See 12 USC 3802. We presume that the party with whom the Patricks initially negotiated the loan satisfies the definition of a "housing creditor" and that the Shaws are a transferee thereof. However, given the parties' agreement that the original loan was not usurious, whether the original loan would have fallen under federal preemption is irrelevant. The real issue is whether the subsequent extension of the note at a higher rate is preempted.

The loan extension does not appear to be the kind of transaction for which Congress intended to preempt state law by enacting the AMTPA. Again, preemption is construed narrowly, and "the purpose of Congress is the ultimate touchstone of interpretation of a federal statute preempting state law." *Nelson, supra* at 594 (internal quotation marks omitted). The First Circuit Court of Appeals explained that the purpose of the AMTPA "was to preempt State *bans* on alternative mortgage transactions." *Grunbeck v Dime Savings Bank of New York, FSB*, 74 F3d 331, 335, 343-344 (CA 1, 1996) (emphasis in original). The District of Columbia Circuit Court of Appeals agreed that the AMTPA was not intended to preempt *all* state laws regarding alternative mortgage transactions (AMTs). *Nat'l Home Equity Mortgage Ass'n v Office of Thrift Supervision*, 362 US App DC 308, 311-313; 373 F 3d 1355 (2004). The Office of Thrift Supervision (OTS) is responsible for "apply-[ing] to state chartered housing creditors only those core regulations that 'authorize' federally chartered housing creditors to 'engage in' AMTs, as opposed to those less central regulations that govern the terms upon which federally chartered creditors may do so; only state laws in conflict with such authorizing provisions are preempted." *Id.* at 312. Significantly, the two letters found in the record from the OTS repeatedly emphasize that the AMTPA is concerned with the *origination* of loans, which is consistent with the stated purpose of the AMTPA, which explicitly extends coverage of the AMTPA to *making, purchasing*, and *enforcing* alternative loan transactions. 12 USC 3801(b).

The parties dispute whether the loan at issue here actually complied with the applicable federal requirements. However, this analysis is irrelevant. It is undisputed that the *original* loan and balloon note was not usurious, and therefore federal preemption is not at

issue. The question is whether the usurious *loan extension* is preempted by federal law. The AMTPA, to the extent it preempts state laws governing loan transactions, is concerned with loan *originations*. Therefore, the AMTPA might have had a preemptive effect had the *original* loan been at issue. The extension, however, is not the kind of transaction Congress intended the AMTPA to address. Because it is outside the scope of Congress's purpose in enacting the AMTPA, preemption does not apply. We therefore agree with the trial court's conclusion that federal preemption does not affect the application of Michigan's usury law in this case.

Because the extension rates were determined to be usurious, the Patricks contend that the trial court erred in permitting the Shaws to charge *any* interest. MCL 438.32. Although there was only one *loan* here, there were effectively two semi-independent *transactions*. The "agreement which does not comply with the provisions of" the usury act was the *extension*; the original loan was indisputably not usurious. Nothing in the current usury act seems to overrule, explicitly or implicitly, the rule that " 'if a transaction or an obligation is free from usury in its origin no subsequent usurious transaction respecting it can affect it with the taint of usury, the theory being that the question whether a contract is usurious or not must be decided with reference to the time when it was entered into.' " *Tierney v Collen*, 272 Mich 200, 204; 261 NW 298 (1935), quoting from 3 ALR 377. As the trial court correctly determined, the original transaction was not usurious; only the subsequent extension at an increased interest rate was usurious. Therefore, the interest *on the extension only* is subject to forfeiture under MCL 438.32. This leaves the original transaction, at its original nonusurious interest rate, and its subsequent extension. The

trial court correctly set the redemption rate on the basis of the original interest rate, excluding only the usurious interest.

For the same reason, the trial court correctly determined that MCL 438.32 does not preclude the Shaws from charging late fees to the extent they are not based on the usurious portion of the interest. The Patricks' argument that no late fees may be charged for payments that are not due is correct. But that argument is inapplicable to valid past-due payments that remained, in fact, outstanding. Likewise, MCL 438.32 does not preclude the Shaws from charging attorney fees, which are also authorized by the balloon note, to the extent they are not based on the usurious portion of the transaction. We do not believe that the Shaws' arguments regarding federal preemption were frivolous, however, so although the increased interest rates are usurious, we do not believe it to be outside the range of reasonable and principled outcomes for the trial court to have granted the fees incurred researching that issue. Given the difficulty in attempting to distinguish between fees earned for various different purposes, and given the trial court's conclusion that the fees themselves were reasonable, we do not believe the attorney fee award should be reversed.[3]

Affirmed.

---

[3] The Patricks assert that the fees were unreasonable because multiple attorneys are listed as billing hours. We see nothing unreasonable in consulting with someone with greater expertise in a given area where appropriate. We also cannot discern any reason why the Shaws' failure to prevail in full *necessarily* precludes them from being awarded their entire fees. Finally, although the Patricks contend that they are themselves entitled to attorney fees, we are unable to discover any evidence from which such an award could be calculated.