NELSON v ASSOCIATES FINANCIAL SERVICES COMPANY
OF INDIANA, INC

Docket No. 227375. Submitted March 7, 2002, at Grand Rapids. Decided
October 29, 2002, at 9:10 A.M. Leave to appeal sought.

Aaron Nelson and Charles Galaske, who prepaid mortgage loans
issued to them by Associates Financial Services Company of Indi-
ana, Inc., within five years of the loans' inception and were
assessed prepayment penalties exceeding 1% of the amounts of pre-
payment, brought an action in the Berrien Circuit Court against
Associates Financial. Among several claims made by the plaintiffs,
Galaske alleged that the inclusion of the prepayment penalty provi-
sions in the loan agreement and the collection of the prepayment
penalty pursuant to those provisions violated MCL 438.31c(2)(c)
and constituted unfair trade practices that are prohibited by the
Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq. The
defendant moved for summary disposition, arguing that MCL
438.31c(2)(c) does not limit prepayment penalties and, even if it
does, is nevertheless preempted by the Depositary Institutions De-
regulation and Monetary Control Act (DIDMCA), 12 USC 17435f-7a.
The court, Lynda A. Tolen, J., denied the motion. The defendant
appealed by leave granted.

The Court of Appeals held:

1. MCL 438.31c(2)(c) provides in part that the parties to a note,
bond, or other evidence of indebtedness, executed after August 11,
1969, the bona fide primary security for which is a first lien against
real property, may agree in writing for the payment of any rate of
interest and that except for a loan insured or guaranteed by the
federal government, if the security is a single family dwelling unit,
the lender shall not charge a prepayment fee or penalty in excess
of 1% of the amount of any prepayment made within three years of
the date of the loan, or any prepayment fee or penalty at all there-
after, or prohibit prepayment at any time. MCL 438.31c(4) provides
that MCL 418.31c(2) shall not authorize or permit a rate of interest
in excess of the rate set forth in MCL 438.41 to 438.42, and MCL
438.31c(5) provides that the provisions of MCL 438.31c(2) shall
apply only to loans made by lenders approved as a mortgagee
under the National Housing Act, ch 847, 48 Stat 1246, or regulated

by the state or by a federal agency, who are authorized by state or federal law to make such loans. The prepayment provisions of MCL 438.31c(2)(c) apply, where, as here, the requirements of MCL 438.31c(2), (4), and (5) are satisfied.

2. Section 501 of the DIDMCA, 12 USC 1735f-7a, preempts state law expressly limiting the rate or amount of interest, discount points, finance charges, or other charges relating to a loan secured by a first lien on residential property, made after March 31, 1980, and described in § 527(b) of the National Housing Act, 12 USC 1735f-5(b). The prepayment limitations of MCL 438.31c(2)(c) are not preempted by § 501 of the DIDMCA because prepayment penalties are not interest, discount points, finance, or other charges as contemplated in § 501 of the DIDMCA.

3. Galaske's allegations regarding the MCPA sufficiently stated a claim on which relief may be granted. Galaske has alleged unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce under the MCPA, subsections 3(1)(n), (t), and (z) of which describe such methods, acts, or practices to include: causing a probability of confusion or misunderstanding regarding the legal rights, obligations, or remedies of a party to a transaction; entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it; and charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

Affirmed.

MORTGAGES — PREPAYMENT PENALTIES.

A state statute prohibits a lender authorized by the state or federal government to make a mortgage loan secured by a single family dwelling unit, but not insured or guaranteed by the federal government, from charging a prepayment fee or penalty in excess of 1% of the amount of any prepayment made within three years of the date of the loan, or any prepayment fee or penalty at all thereafter; the prepayment limitations set by this state statute are not preempted by the Depositary Institutions Deregulation and Monetary Control Act, a federal statute (MCL 438.31c[2][c]; 12 USC 1735f-7a).

*Currie Kendall Polasky Meisel PLC* (by *Peter A. Poznak* and *William Jay Brown*) for the plaintiff.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Larry J. Saylor, B. Jay Yelton, III,* and *Todd A. Hollerman*), for the defendant.

Before: METER, P.J., and MARKEY and OWENS, JJ.

MARKEY, J. Defendant appeals by leave granted the trial court's order denying defendant's motion for summary disposition on count IV of plaintiff Charles Galaske's first amended complaint. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

This case involves defendant's practice of charging its customers a mortgage prepayment penalty "in an amount equal to six months interest on the amount prepaid in excess of 20% of the original balance" when "an amount in excess of 20% of the original principal balance is prepaid in any twelve-month period within five years of the loan date." According to plaintiffs' first amended complaint, plaintiffs entered into separate loan agreements with defendant, and each plaintiff secured the loan with a first mortgage on a parcel of real property. Each loan agreement contained the following provision governing prepayment of the principal balance:

> If I prepay early, no part of the loan fee will be refunded to me. Further, if real estate is given as security for this loan, and if an amount in excess of 20% of the original principal balance is prepaid in any twelve-month period within five years of the loan date, I agree to a prepayment penalty in an amount equal to six months interest on the amount prepaid in excess of 20% of the original balance.

Less than five years after executing these loan agreements, plaintiffs decided to prepay their respec-

tive mortgages and requested prepayment "payoff confirmations" from defendant. In each respective prepayment statement, defendant itemized the amount of the prepayment penalty to be paid under the terms of the mortgage agreement. Each plaintiff paid the prepayment penalty fee in addition to the principal due.

Subsequently, plaintiffs commenced the instant lawsuit on behalf of themselves and as representatives of a class of defendant's customers who paid prepayment penalties in excess of one percent of the amount of the prepayment after the first three years of the loan had passed. In their first amended complaint, plaintiffs alleged in count I that defendant violated MCL 438.31c(2)(c) by charging a prepayment penalty in excess of one percent of the amount of any prepayment on a first lien mortgage loan and/or more than three years from the date of the loan. Plaintiffs also alleged in counts II and III that defendant is not licensed or registered with the Financial Institutions Bureau of the Michigan Department of Commerce as required by the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, MCL 445.1651 *et seq.*, and the Consumer Financial Services Act, MCL 487.2051 *et seq.*, and that defendant's prepayment penalty charge violates these acts. In count IV, plaintiffs further alleged that the inclusion of the prepayment provisions in the loan agreements executed between the parties and the collection of the prepayment penalties pursuant to those provisions constitute unfair trade practices and are unlawful under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.* Plaintiffs alleged that the prepayment penalty at issue is an unfair trade practice because it falls under the

description of three particular unfair trade practices listed in the MCPA, specifically MCL 445.903(1)(n), (t), and (z).

In lieu of answering their complaint, defendant removed the case to federal district court, alleging federal questions, i.e., federal preemption and diversity jurisdiction. *Nelson v Assoc Fin'l Servs Co of Indiana, Inc*, 79 F Supp 2d 813, 815 (WD Mich, 2000). The federal district court remanded the case to the Berrien Circuit Court after concluding that defendant's preemption argument was insufficient to invoke federal question jurisdiction and that the court lacked diversity jurisdiction. *Id.* at 821.

On remand to the circuit court, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) regarding plaintiff Aaron Nelson's complaint on the basis of a prior agreement to arbitrate. Defendant also moved for summary disposition of counts I and IV of plaintiff Galaske's complaint on the grounds that the Michigan usury statute was preempted by § 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), 12 USC 17435f-7a (MCR 2.116[C][4]), that plaintiff Galaske had waived the only remedy available under the usury statute by voluntarily paying the penalty (MCR 2.116[C][7]), and that Michigan's usury statute does not create a cause of action for the alleged illegal prepayment penalties (MCR 2.116[C][8]).

Plaintiffs claimed that defendant's argument recognized that prepayment penalties are not interest and therefore not preempted by federal law. Plaintiffs further argued that even if they had waived the right to directly assert defendant's violation of MCL

438.31c(2)(c) by paying the penalty, they could still assert their claim under the MCPA.

The court agreed with plaintiffs and denied defendant's motion for summary disposition with respect to count IV (plaintiff Galaske's MCPA claim), reasoning in part:

> Defendant Associate [sic] asserts that it is entitled to summary disposition of counts one and four basically for three reasons, three grounds. The first, it claims that it is entitled to summary disposition because this was not a (C)(2)(c) loan under 438.31(C). The Court finds that the Defendant's argument in this regard is strained, illogical, and does not comport with the statute as a whole which was—which is a remedial statute and it seeks to protect borrows—borrowers, specifically borrowers who have mortgaged their real property, their residential dwellings by adding these additional protections.
>
> I believe that the section of the statute that applies to this case is 31(C), not the general usury statute, 31. Therefore, the Court cannot use that as a basis for granting the motion for summary disposition.
>
> With regard to the second argument, it wasn't argued too much today, but Associates argues in its brief that this area was preempted by the Federal Depository Institutions Deregulation and Monitory [sic] Control Act of 1980, 12 USC 1735(F)-(7)(a), which indicates according to citing the *Shaunt* (ph) case that this Court does not have subject matter jurisdiction. The Court finds that this Court does in fact have subject matter jurisdiction. As stated in 12 CFR 590.3(C), which are the regulations authorized by 12 USC 1735(F)(7)(a) and (7)(f):
>
> "Nothing in this section preempts limitation in state laws on prepayment charges or other provisions designed to protect borrowers."
>
> So the statute in question, the Michigan usury statute, is a statute designed to protect borrowers. Therefore this Court does have subject matter jurisdiction, and the motion for summary disposition cannot be granted on that ground.

* * *

> With regard to the count four complaint, however, the Court agrees with the Plaintiffs that a violation of the Michigan usury statute can in fact provide the foundation for violation of the Michigan Consumer Protection Act. And the Court finds that it must deny the motion for summary disposition with regard to count four of the complaint.

The court further noted that because defendant's motion was brought and decided under MCR 2.116(C)(8), it was premature to find whether as a matter of fact defendant engaged in any unfair trade practice. The court found, however, "that the Plaintiffs have stated a cause of action for such and the Defendants [sic] will have to file an answer to that count, and the case will go from there."

But, regarding count I of plaintiff Galaske's complaint (using MCL 438.31c as a sword), the court granted summary disposition to defendant finding that plaintiff Galaske's voluntary payment of the prepayment penalty constituted a waiver of any right to a remedy under the usury statute. The court further granted summary disposition in favor of defendant with regard to plaintiff Nelson's complaint and directed that his claims be submitted to arbitration. Thereafter, defendant filed an application for leave to appeal, which this Court granted.

II. ANALYSIS

A. MCL 438.31c

Defendant argues that MCL 438.31c(2)(c) does not independently limit prepayment penalties on first mortgage loans; rather, it is only one of five criteria necessary to trigger MCL 438.31c(2), an exception to

the main usury limits of seven percent or less found in MCL 438.31. Defendant reads MCL 438.31c(2) and MCL 438.31c(5) together and asserts that the five criteria are: (1) the mortgage loan bears a fixed rate of interest, MCL 438.31c(2); (2) the lender does not require that the borrower maintain a deposit account, MCL 438.31c(2)(a); (3) the lender does not require payment of discounts or points not authorized by federal law, MCL 438.31c(2)(b); (4) the lender does not charge a prepayment penalty contrary to MCL 438.31c(2)(c); and (5) the lender is approved as a mortgagee under state or federal law, MCL 438.31c(5). Defendant asserts that when one or more of these criteria are not satisfied, MCL 438.31c(2) does not apply and either the seven percent limit of MCL 438.31 or the eleven percent limit of MCL 438.31c(2)(7) would apply. We conclude that the circuit court correctly found that MCL 438.31c(2)(c) is applicable to plaintiff Galaske's loan from defendant and that defendant's strained construction of the statute must be rejected as contrary to the intent of the Legislature.

A trial court's grant or denial of summary disposition is reviewed de novo on appeal. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Statutory interpretation and the issue of federal preemption are both questions of law reviewed de novo on appeal. *Oakland Co Bd of Rd Comm'rs v Michigan Prop & Cas Guar Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *Konynenbelt v Flagstar Bank, FSB*, 242 Mich App 21, 27; 617 NW2d 706 (2000).

At issue in this case is the construction of and interplay between MCL 438.31 and MCL 438.31c.

MCL 438.31 provides in pertinent part:

The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. *This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness* issued by any corporation, association or person, *the issue and rate of interest of which* have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or *is regulated by any other law of this state, or of the United States,* nor shall it apply to any time price differential which may be charged upon sales of goods or services on credit. [Emphasis added.]

## MCL 438.31c provides in pertinent part:

(2) The parties to a note, bond, or other evidence of indebtedness, executed after August 11, 1969, *the bona fide primary security for which is a first lien against real property,* or a land lease if the tenant owns a majority interest in the improvements, or the parties to a land contract, *may agree in writing for the payment of any rate of interest,* but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason. *In connection with the transaction,* except a loan, insured or guaranteed by the federal government or any agency of the federal government, *if the security is a single family dwelling unit, the lender shall not do any of the following:*

*              *              *

(c) *Charge a prepayment fee or penalty in excess of 1% of the amount of any prepayment made within 3 years of the date of the loan, or any prepayment fee or penalty at all thereafter, or prohibit prepayment at any time.*

(3) *Subsection (2) shall not impair the validity of a transaction or rate of interest lawful without regard to subsection (2).*

(4) Subsection (2) shall not authorize or permit a rate of interest in excess of the rate set forth in Act No. 259 of the Public Acts of 1968, being sections 438.41 to 438.42 of the Michigan Compiled Laws.

(5) The provisions of subsection (2) *shall apply only to loans made by lenders* approved as a mortgagee under the national housing act, chapter 847, 48 Stat. 1246, or *regulated by the state or by a federal agency, who are authorized by state or federal law to make such loans.* [Emphasis added.]

The primary goal in construing a statute is to ascertain and effectuate the intent of the Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). The first step in determining the intent of the Legislature is to review the specific wording of the statute itself. *Id.* Where the plain and ordinary meaning of the language of the statute is clear and unambiguous, judicial construction is neither required nor permitted. *Id.* As far as possible, effect should be given to every phrase, clause, and word, *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999), but parts of a statute must be read in the context of the entire statute so as to produce a harmonious whole, *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). Where it is necessary to construe a statute, the language should be construed reasonably to give effect to the intent of the Legislature. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). Thus, the court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

A statute is remedial if it is designed to correct an existing oversight in the law, redress an existing grievance, introduce regulations conducive to the public good, or is intended to reform or extend existing rights. *Tobin v Providence Hosp*, 244 Mich App 626, 665; 624 NW2d 548 (2001), quoting *Rookledge v Garwood*, 340 Mich 444, 453; 65 NW2d 785 (1954). Remedial statutes are to be liberally construed in favor of the persons intended to be benefited. *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993).

MCL 438.31c(2) is plainly designed to facilitate the purchase of residential property by allowing market forces to establish the interest rate for loans enabling the purchase of such property. At the same time, the evident intent of the Legislature was to protect borrowers, "if the security is a single family dwelling unit," from being "locked in" to high interest rates by excessive prepayment penalties. Thus, the statute is designed to introduce regulations conducive to the public good, and is remedial legislation, *Tobin, supra* at 665, quoting *Rookledge, supra*, which is entitled to a liberal construction in favor of the class of persons intended to be benefited, *Dudewicz, supra*.

Defendant's effort to create an ambiguity by arguing that the statute's proscriptions are criteria for its application fails because an ambiguity does not exist. As the trial court noted, defendant's construction "does violence to the statute" and is contrary to the evident intent of the Legislature to assist and to protect mortgagors of single-family dwellings. The plain language of the statute provides that its application depends on the identification of the lender, not on the terms of its contracts and on what the loan security

is. Thus, by the Legislature's plain words, subsection 2 of § 31c "shall apply only to loans made by lenders . . . regulated by the state or by a federal agency," MCL 438.31c(5), and for which "the bona fide primary security . . . [is a] first lien against real property," MCL 438.31c(2). When these two elements are present, the parties may agree in writing to any rate of interest less than criminal usury (i.e., twenty-five percent). MCL 438.31c(4); MCL 438.41. Further, unless the loan is federally insured or guaranteed, "if the security is a single family dwelling unit," then the prepayment penalty provisions of MCL 438.31c(2)(c) apply.

Defendant's argument that its construction of the statute is correct because otherwise MCL 438.31c(3) would be rendered meaningless is also without merit. That subsection merely authorizes a lender and a borrower to enter into another valid loan agreement at a legal interest rate. That is, where either the lender does not fall within the meaning of MCL 438.31c(5) or where the primary security is not a first lien on real property, then subsection 2 will not apply and impair the otherwise lawful "transaction or rate of interest." This construction gives meaning to subsections 2, 3, and 5, and best accomplishes the statute's purpose so as to produce a harmonious whole from the context of the entire section. *Macomb Co Prosecutor, supra* at 159; *Marquis, supra* at 644.

We disagree, however, with plaintiffs' contention that subsection 2 would not apply if the interest rate were less than that specified in MCL 438.31 (i.e., seven percent) even if the transaction were otherwise within its terms. As plaintiffs note, MCL 438.31 expressly provides that it applies only when no other

state or federal law regulates the interest rate. Thus, if the lender meets the definition of MCL 438.31c(5) and the bona fide primary security for the loan is a first lien on real property, then a rate of interest agreed to by the borrower and a lender that is below seven percent is still "any rate of interest" within the plain language of MCL 438.31c(2).

For the foregoing reasons, the free market interest rate allowed by MCL 438.31c(2) applies as long as subsections 2, 4, and 5 are satisfied. If these subsections are satisfied, then the restrictions of subparagraphs 2(a)-(c) apply, provided the security is a single-family dwelling and the loan is not federally insured or guaranteed.[1] The circuit court correctly reached these conclusions; therefore, it did not err in rejecting defendant's construction of MCL 438.31c.

### B. PREEMPTION

Defendant argues that the Michigan usury statute is preempted by § 501 of the DIDMCA, which applies to plaintiff Galaske's loan because it is a first lien on residential real property, made after March 31, 1980, and is a "federally related mortgage loan" described in 12 USC 1735f-5(b) because defendant is a creditor as defined in 15 USC 1602(f) (regularly extends credit payable in more than four installments and is the person to whom the debt is initially payable). We disagree and conclude that the trial court did not err in rejecting defendant's preemption challenge.

Section 501 of the DIDMCA, 12 USC 1735f-7a, provides in relevant part:

---

[1] None of plaintiffs' loans were insured by the federal government or any agency thereof.

(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—

(A) secured by a first lien on residential real property [. . .]

(B) made after March 31, 1980; and

(C) described in section 527(b) of the National Housing Act (12 USC 1735f-5(b)).

The parties do not dispute that plaintiff Galaske's loan comes within the definition of § 501 of the DIDMCA, 12 USC 1735f-7a. See, e.g., *Shelton v Mut S & L Ass'n, FA*, 738 F Supp 1050, 1056-1057 (ED Mich, 1990). Here, plaintiff's loan is a "federally related loan" because defendant is a "creditor" as defined in 15 USC 1602(f). Section 501 of the DIDMCA does not preempt state regulation of prepayment penalty charges, which are not considered interest or within the finance charge component of a loan. 12 CFR 590.3(c); *Grunbeck v Dime Sav Bank of New York, FSB*, 74 F3d 331 (CA 1, 1996); see, also, *Konynenbelt, supra* at 32-37. However, defendant does not directly argue that state prepayment penalty limitations are preempted by the DIDMCA. Instead, defendant relies on its state statutory construction argument that MCL 438.31c(2)(c) does not apply to plaintiff's loan. Having concluded that the trial court properly rejected defendant's construction of MCL 438.31c(2)(c), we now address defendant's issue of federal preemption.

There is no question that "[u]nder the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, federal law preempts state law where

Congress so intends." *Konynenbelt, supra* at 25. In addition, as in § 501 of the DIDMCA, where Congress has expressly provided that federal law preempts state law, the only question is the extent of that preemption. *Grunbeck, supra* at 336. Federal preemption analysis is guided by two presumptions: first, that under principles of federalism, preemption is narrowly construed and, second, that the purpose of Congress is " 'the ultimate touchstone' " of interpretation of a federal statute preempting state law. *Brown v Investors Mtg Co*, 121 F3d 472, 475 (CA 9, 1997), quoting *Medtronic, Inc v Lohr*, 518 US 470, 485; 116 S Ct 2240; 135 L Ed 2d 700 (1996); see, also, *Konynenbelt, supra* at 35.

The scope of a federal preemption is determined " 'first and foremost, from the language of the federal statute, employing traditional rules of statutory construction.' " *Konynenbelt, supra* at 28, quoting *Grunbeck, supra* at 336. Thus, for § 501 of the DIDMCA to preempt MCL 438.31c(2)(c), prepayment penalty limitations must come within the meaning of a state law "expressly limiting the rate or amount of interest, discount points, finance charges, or other charges." 12 USC 1735f-7a(1).

The issue in *Grunbeck, supra* at 334-335, was whether the DIDMCA preempted a state law requiring lenders to charge only simple interest, i.e., prohibited compounding interest on interest. The court found that under the plain language of § 501 of the DIDMCA, the state statute in question did not " 'expressly' limit the 'rate or amount of interest' " the lender could charge. *Id.* at 338, n 6. Nonetheless, the court went on to address the issue as if an ambiguity existed by

examining the congressional history of the DIDMCA, opining that

> relevant legislative history clearly reflects a congressional intention to confine the scope of section 501(a)(1) preemption to state laws which impose express *ceilings* on the rate or amount of interest which may be charged, as distinguished from *bans* against charging interest on interest or compounding. The legislative aim in enacting section 501 focused on "state usury *ceilings*," S Rep No 368, 96th Cong, 2d Sess 18-19, *reprinted in* 1980 USCCAN 236, 254-55 (emphasis added), with particular emphasis on state usury laws which restrict interest rates to *below-market* levels and result in *artificial disruptions* in the supply of home-loan mortgage funds. [*Id.* at 339 (emphasis in original).]

The *Grunbeck* court further noted that Congress did not intend preemption to apply to prepayment penalties and other limitations designed to protect borrowers, but rather, preemption applied only to usury limits considered within the "annual percentage rate." The court stated:

> Congress also signaled its narrow preemptive intent under section 501(a)(1) by insulating these mortgage loans from state *usury limitations only*, and not from other state-law limitations encompassed within the "annual percentage rate" nor other state-law limitations designed to protect borrowers:
>
> "In exempting mortgage loans from state usury limitations, the Committee intends to exempt only those limitations that are included in the annual percentage rate. The Committee does not intend to exempt limitations on prepayment charges, attorney fees, late charges *or similar limitations designed to protect borrowers*." 1980 USCCAN at 255 (emphasis added). [*Id.* at 340 (emphasis added).]

In *Konynenbelt, supra*, this Court considered whether the DIDMCA preempted MCL 565.41, which

requires that upon satisfaction of a mortgage, a mort-gagee "shall file a discharge thereof with the register of deeds and pay the fee for recording the discharge." Defendant Flagstar Bank, which customarily charged its mortgagors the $9 recording fee upon satisfaction of the loan, claimed the fee came within the meaning of "other charges" for which state-law limitation is preempted by § 501 of the DIDMCA. *Konynenbelt, supra* at 23, 34. This Court disagreed, finding that Congress intended to foster home loans "by assuring the availability of home loans, albeit at potentially high interest rates," and that

> this legislative purpose dealing with interest rates and the availability of home loans is not affected by plaintiffs' state law claims objecting to Flagstar's practice of charging the $9 recording fee. As correctly stated by the trial court, the $9 recording fee was not an "up-front cost" and did not affect the interest rates imposed by Flagstar. The fee has nothing to do with the lending of money and the availability of home loans because the fee is imposed after the loan has already been made. Moreover, Congress also indicated its narrow preemptive intent under the DIDMCA by insulating the first mortgage home loans from state usury limitations only[.] [*Id.* at 35.]

The prepayment penalty limitation at issue in this case likewise does not affect the interest rate that defendant may charge, nor does it hinder the intent of both MCL 438.31c(2) and § 501 of the DIDMCA to encourage the availability of mortgage money for resi-dential housing (by allowing market interest rates to prevail). Rather, it is a regulation designed to protect borrowers not within the intent of Congress to pre-empt. *Grunbeck, supra* at 340; *Konynenbelt, supra* at 35.

Moreover, this Court may defer to administrative agency interpretations of statutes within their responsibility to administer, particularly when such interpretations are consistent with the legislative history or other persuasive reasoning. *Grunbeck, supra* at 340-341; *Konynenbelt, supra* at 28-29. The Federal Home Loan Bank Board (now the Office of Thrift Supervision) has adopted regulations implementing § 501 of the DIDMCA, *Grunbeck, supra* at 341, including 12 CFR 590.3(c), which provides that "[n]othing in this section preempts limitation in state laws on prepayment charges, attorneys' fees, late charges or other provisions designed to protect borrowers."

Similarly, the Michigan Financial Institutions Bureau (MFIB), charged with the responsibility of regulating financial institutions in Michigan, has issued Mortgage Bulletin 1998-01 concluding that the prepayment penalty proscriptions of MCL 438.31c(2)(c) are not preempted by § 501 of the DIDMCA. The MFIB bulletin provides in part:

> Section 501(a)(1) of the Depository Institutions Deregulation and Monetary Control Act of 1980 does not preempt MCL 438.31c(2)(c). As a result, lenders who make loans secured by first mortgages on residential property, except for certain alternative mortgage transactions, are prohibited from charging Michigan consumers prepayment fees or penalties outside of those allowed by MCL 438.31c(2)(c). [MFIB Mortgage Bulletin 1998-01, p 1.]

The position of the MFIB is well reasoned, persuasive, and therefore entitled to this Court's deference. Accordingly, the circuit court did not err by concluding that § 501 of the DIDMCA does not preempt the limitations on prepayment penalties established by MCL 438.31c(2)(c).

C. MCPA

Defendant argues that even assuming the MCPA would prohibit a lender from assessing "unlawful" charges, MCL 438.31c(2)(c) does not independently limit prepayment penalties, but is merely one of five statutory criteria necessary to fit within MCL 438.31c(2), an exception to the usury limits that would otherwise apply. Defendant asserts that because the DIDMCA preempted those limits, defendant's loan agreements are lawful and not in violation of the MCPA. We conclude that the trial court correctly determined that count IV of plaintiff Galaske's amended complaint states a claim upon which relief may be granted because it alleges a violation of the MCPA, MCL 445.901 *et seq.*, premised upon violation of MCL 438.31c(2)(c).

Section 3 of the MCPA, MCL 445.903, declares unlawful, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Plaintiff Galaske alleges that defendant's prepayment penalties in excess of those authorized by MCL 438.31c(2)(c) meet the definitions of such practices found in subsections n, t, and z of MCL 445.903(1):

> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.
>
> (t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.
>
> (z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

A private person may bring an action for declaratory relief, injunctive relief, and actual damages or $250, whichever is greater, under § 11 of the MCPA, MCL 445.911. See also *Smith v Globe Life Ins Co*, 460 Mich 446, 449, 468; 597 NW2d 28 (1999), which held that a private person may bring an action under the MCPA for alleged violation of the Insurance Code. Also, this Court has approved actions under the MCPA where it was alleged that the defendants induced borrowers to create sham corporations for the purpose of evading usury limitations. *Rutter v Troy Mtg Servicing Co*, 145 Mich App 116, 120, 124-125; 377 NW2d 846 (1985); *Allan v M & S Mtg Co*, 138 Mich App 28, 42-43; 359 NW2d 238 (1984).

While *Rutter, supra,* and *Allan, supra,* are egregious cases of unscrupulous lenders taking advantage of debtors in dire straits, plaintiff Galaske's allegations in the present case sufficiently plead a cause a cause of action that raises factual issues. Consequently, one cannot conclude that plaintiff's claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

### III. CONCLUSIONS

In summary, we conclude that (1) the trial court correctly held that MCL 438.31c(2)(c) applies to plaintiff Galaske's loan from defendant, (2) the trial court properly concluded that § 501 of the DIDMCA does not preempt the limitations on prepayment penalties established by MCL 438.31c(2)(c), and (3) the trial court correctly determined that count IV of plaintiff Galaske's amended complaint states a claim upon

which relief may be granted because it alleges a violation of the MCPA, MCL 445.901 *et seq.*, premised upon a violation of MCL 438.31c(2)(c).

We affirm.