*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY FRYE,

Plaintiff-Appellant,

v

GOLFPOINTE VILLAGE CONDOMINIUMS AT
PLUMBROOK, also known as THE PLUMBROOK
LIMITED PARTNERSHIP, GOLFPOINTE
VILLAGE ASSOCIATION,

Defendant-Appellee.

UNPUBLISHED
March 10, 2022

No. 355864
Macomb Circuit Court
LC No. 2020-000824-CH

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition to defendant under MCR 2.116(C)(10), in this condominium foreclosure action. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2006, plaintiff purchased her condominium unit in Golfpointe Village Condominiums at Plumbrook, which is a residential condominium project that is administered by an association of co-owners. For purposes of this opinion, we refer to the condominium project and the association collectively as "defendant."

Defendant's bylaws authorized assessments to be levied against each of the co-owners in the condominium project to cover expenses of administration. The bylaws also permitted assessing reasonable automatic late fees and fines for the late payment of assessments. The bylaws further provided that each co-owner was personally liable for all assessments, as well as costs of collection and enforcement of payments, related to the co-owner's unit. Additionally, the bylaws authorized defendant to enforce collection of delinquent assessments by foreclosure of the statutory lien securing payment of assessments. Defendant could pursue foreclosure by judicial action or advertisement. The expenses incurred in collecting unpaid assessments, including interest, late charges, fines, costs, actual attorney fees, and advances for taxes or other liens paid

-1-

by defendant were chargeable to a co-owner in default and secured by a lien on the co-owners unit, pursuant to the terms of the bylaws.

Plaintiff stopped paying assessments to defendant in 2009. In 2012, plaintiff filed for Chapter 13 bankruptcy. However, approximately six months before the end of her five-year bankruptcy plan, she was diagnosed with cancer, stopped working, and did not complete the plan. The bankruptcy case was dismissed in May 2017.

In 2018, plaintiff was able to return to work and again filed for bankruptcy. An order was entered on January 9, 2019, by the bankruptcy court in plaintiff's 2018 bankruptcy case, based on a stipulation between plaintiff and defendant, that defendant's statutory lien against plaintiff's condominium for all pre-petition assessments and dues would be discharged from the property *if plaintiff successfully completed her Chapter 13 bankruptcy plan and an order of discharge was entered by the bankruptcy court*. The bankruptcy court's January 9, 2019 order further provided that "if the Debtor fails to complete the Chapter 13 plan and obtain a Chapter 13 discharge order in bankruptcy case number 18-40570-MLO or if this case is dismissed or converts to any other chapter under the United States Bankruptcy Code, then this Order shall not affect the validity or enforceability of the Association's lien, the lien shall not be discharged, and may not be used in any subsequent bankruptcy case of the Debtor either to compel the holder of the lien to execute a discharge of the lien, or to otherwise act as a discharge of the lien."

On November 25, 2019, the bankruptcy court entered an order terminating the automatic stay as to defendant and granting defendant "leave to exercise its State law remedies" with respect to plaintiff and her condominium unit. The bankruptcy trustee filed action to remedy a default by plaintiff in her performance under the plan.

In a letter addressed to plaintiff and dated December 11, 2019, defendant's legal counsel informed plaintiff that the bankruptcy court had granted defendant relief from the automatic stay in plaintiff's bankruptcy case and that defendant was "now entitled to proceed with foreclosure of its lien." The letter instructed plaintiff to mail payment to defendant before December 23, 2019, if she wished to have the lien removed. The letter further informed plaintiff that the amount secured by the lien was $30,220.21, that this amount "only include[d] those amounts owing as of the date of this letter," and that "Assessments, applicable late fees, attorney fees and costs on unpaid assessments that accrue subsequent to the date of this letter will be imposed consistent with the Association's governing documents." According to the letter, a copy of the corrected lien and a copy of the current account statement reflecting the amounts secured by the lien was enclosed.

The affidavit of correction of lien dated December 11, 2019, stated that a lien regarding plaintiff's condominium that was recorded in 2011 erroneously stated the amount owed and that the amount should have been $5,296.50. Notably, the lien recorded in 2011 specifically provided that indicated amount due was "exclusive of interest, late charges, costs and attorney fees and any annual assessments and/or any additional and/or special assessments in respect of the current and subsequent fiscal years which may hereafter be accelerated and become due . . . ."

Plaintiff's 2018 bankruptcy case was dismissed on January 29, 2020. In a letter addressed to plaintiff and dated January 29, 2020, defendant's legal counsel informed plaintiff that the sheriff's sale for her property was scheduled to occur on February 28, 2020. Additionally, notice

of the foreclosure sale had been posted on plaintiff's property on January 27, 2020. This notice indicated that the amount secured by the lien was $31,068.57 and that this amount could increase by the time of the sale.

On the day of the scheduled sheriff's sale, plaintiff filed the instant action alleging wrongful foreclosure, breach of contract, and violation of the Michigan Consumer's Protection Act (MCPA), MCL 445.901 *et seq*. With respect to the wrongful foreclosure claim, plaintiff alleged that defendant had violated MCL 600.3204 and thus could not foreclose on her condominium. Plaintiff asserted that she made payments to defendant through the bankruptcy proceedings and did not owe as much money as defendant claimed, such that defendant's foreclosure attempt was based on an invalid default. Regarding the breach of contract claim, plaintiff alleged that defendant had breached its bylaws by publishing an advertisement of the foreclosure before proving the requisite notice to plaintiff. Finally, plaintiff claimed that defendant violated the MCPA by misrepresenting the amount owed by plaintiff, improperly placing a lien on plaintiff's property, initiating foreclosure proceedings against plaintiff when there was a discrepancy in the amount owed, and inflating the amount of plaintiff's arrearage by assessing excessive attorney fees against plaintiff while plaintiff was in bankruptcy and defendant was already collecting attorney fees through the bankruptcy proceedings.

On the same day, plaintiff also filed a motion for a temporary restraining order (TRO) seeking to enjoin defendant from alienating plaintiff's real property or proceeding with foreclosure, the sheriff's sale, or eviction proceedings against plaintiff. Plaintiff alleged that defendant was claiming she owed over $30,000 despite a lien recorded in 2019 stating that she owed approximately $5,000. The trial court granted the TRO that same day.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(10). Defendant argued there was no genuine issue of material fact that: (1) plaintiff was liable under MCL 559.208 and the condominium bylaws for sums assessed by defendant that remained unpaid, including interest, costs, actual attorney fees, and advances for taxes or other liens paid by defendant to protect its lien against plaintiff's condominium unit; (2) that defendant was entitled under MCL 559.208 and the bylaws to foreclose the lien securing the assessments plaintiff owed; (3) that defendant provided proper notice to plaintiff before the foreclosure sale; (4) that defendant applied all payments made by the bankruptcy trustee to plaintiff's account and plaintiff had not identified any payments that were not credited; (5) that there was a valid default by plaintiff in the payment of assessments; and (6) that the foreclosure did not violate statutory requirements. Defendant asserted that it was entitled to summary disposition in its favor on all three of plaintiff's claims.

According to a September 25, 2020 statement of plaintiff's account submitted by defendant with its motion, plaintiff still owed defendant $42,900.01 as of September 25, 2020. The account statement reflects that this total debt was calculated based on $28,574.50 in assessments levied since plaintiff initially stopped paying assessments in 2009; $23,154.99 in attorney fees; over $5,000 in late fees, interest, and costs; and the credit of $14,971.42 in payments defendant had received from plaintiff. The account statement included an itemized record of fees and assessments levied against plaintiff, as well as payments she had made, for the time period from July 2009 to September 25, 2020.

In response, plaintiff asserted that the amount she allegedly owed defendant was erroneous, characterizing the "enormous arrearage" as a "legal impossibility." Plaintiff seemingly questioned the legitimacy or accuracy of various entries in documents related to the amount she owed, which she labeled "[c]ontradictions and suspicions." After listing a series of questions in her brief essentially asking how her accrued assessments and fees could be so high, plaintiff did not provide any evidence or argument that any payments she or the bankruptcy trustee made to defendant were not credited to her account or that any of the amounts assessed against her and listed in the most recent account statement were actually incorrect. Plaintiff seemingly relied on evidence of amounts that she owed at various times in the past during her bankruptcy proceedings to insist that the current amount of her debt was somehow too high. In doing so, plaintiff appeared to disregard the evidence that assessments, late fees, interest, and attorney fees could continue to accrue as time went on. Plaintiff nonetheless asserted that the amount of her arrearage was unknown, thus making the default on which the foreclosure was premised invalid such that defendant violated MCL 600.3204 in pursuing the foreclosure. According to plaintiff, this rendered the sheriff's sale voidable.

Plaintiff next argued that summary disposition was improper regarding her breach of contract claim, alleging that defendant violated a provision in the bylaws by not providing plaintiff notice of the foreclosure 10 days before the publication of notice of the foreclosure. Finally, plaintiff contended that defendant violated the MCPA by "caus[ing] a probability of confusion or misunderstanding as to the legal rights, obligations or remedies of Plaintiff by misrepresenting the amount of debt owed, failing to provide notice, the nature of this action, and declaring an improper default."

The trial court held a hearing on the motion and heard oral argument. Plaintiff's counsel admitted on the record at the hearing that plaintiff did not have any proof of any payments that were made to defendant on plaintiff's behalf that were not credited to plaintiff's account.

The trial court entered a written opinion and order granting summary disposition in favor of defendant on all of plaintiff's claims. The trial court concluded that plaintiff did not produce any evidence showing that defendant failed to properly credit amounts paid to plaintiff's account or otherwise miscalculated the amount plaintiff owed. The trial court also stated that it was undisputed that plaintiff failed to obtain a discharge from her bankruptcy plans and therefore was not relieved of her arrearage obligations to defendant. Further, the trial court noted that there was no evidence that plaintiff ever brought her account current or made any payments to defendant that were not reflected in the account statement. Consequently, the trial court concluded that there was no genuine issue of material fact that plaintiff owed an unpaid balance to defendant, that defendant was entitled under MCL 559.208 and its bylaws to foreclose on plaintiff's condominium in the case of a default, and that plaintiff had failed to create a genuine issue of material fact regarding a wrongful foreclosure under MCL 600.3204.

Next, the trial court ruled that defendant was entitled to summary disposition on plaintiff's breach of contract claim. The trial court determined that there was no genuine issue of material fact that in December 2019, plaintiff received notice of both the amount of plaintiff's delinquency and that defendant was foreclosing on the lien against plaintiff's condominium. Additionally, the trial court determined that there was no question of fact that publication of the foreclosure began

on January 27, 2020, which was more than 10 days later, and that the 10-day notice provision in the bylaws was thereby satisfied.

Finally, the trial court concluded that defendant was entitled to summary disposition on plaintiff's MCPA claim because plaintiff had failed to provide any evidence creating a question of fact that defendant was engaged in the conduct of trade or commerce for purposes of the act since plaintiff was a member of defendant's association, and plaintiff nonetheless failed to provide any evidence of conduct by defendant that was deceptive, misleading, or created confusion.

Plaintiff now appeals.

## II. STANDARD OF REVIEW

This court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When evaluating a motion for summary disposition brought under MCR 2.116(C)(10), a court "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 120 (citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The interpretation of a contract presents an issue of law that this Court reviews de novo. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

## III. ANALYSIS

### A. WRONGFUL FORECLOSURE UNDER MCL 600.3204

Plaintiff first argues that there was a genuine question of material fact regarding the amount she owed defendant and thus whether there was a valid default for purposes of MCL 600.3204.

Section 108 of the Condominium Act, MCL 559.101 *et seq*., provides in relevant part as follows:

> (1) *Sums assessed to a co-owner by the association of co-owners that are unpaid together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the condominium documents, constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment* before other liens except tax liens on the condominium unit in favor of any state or federal taxing authority and sums unpaid on a first mortgage of record, except that past due assessments that are evidenced by a notice of lien recorded as set forth in subsection (3) have priority over a first mortgage recorded subsequent to the recording of the notice of lien. The lien upon each condominium unit owned

by the co-owner shall be in the amount assessed against the condominium unit, plus a proportionate share of the total of all other unpaid assessments attributable to condominium units no longer owned by the co-owner but which became due while the co-owner had title to the condominium units. *The lien may be foreclosed by an action or by advertisement by the association of co-owners in the name of the condominium project on behalf of the other co-owners.*

(2) *A foreclosure shall be in the same manner as a foreclosure under the laws relating to foreclosure of real estate mortgages by advertisement or judicial action except that to the extent the condominium documents provide, the association of co-owners is entitled to reasonable interest, expenses, costs, and attorney fees for foreclosure by advertisement or judicial action.* The redemption period for a foreclosure is 6 months from the date of sale unless the property is abandoned, in which event the redemption period is 1 month from the date of sale. [MCL 559.208 (emphasis added).]

MCL 600.3204(1) provides:

(1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) *A default in a condition of the mortgage has occurred*, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part. For purposes of this subdivision, an action or proceeding for the appointment of a receiver is not an action or proceeding to recover a debt.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

"[D]efects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 115; 825 NW2d 329 (2012). This Court has explained that "[t]he *Kim* decision established that a mortgagor seeking to set aside a foreclosure by advertisement must allege facts to support three essential elements of the claim: (1) fraud or irregularity in the foreclosure procedure, (2) prejudice to the mortgagor, and (3) a causal relationship between the alleged fraud or irregularity and the alleged prejudice, i.e., that the mortgagor would have been in a better position to preserve the property interest absent the fraud or irregularity." *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 210-211; 859 NW2d 238 (2014).

Here, plaintiff maintains the trial court erred in determining there were not any genuine issues of material fact with respect to the amount she owed defendant and whether there was a valid default to satisfy the requirement of MCL 600.3204(1)(a). However, the trial court correctly found that plaintiff provided no evidence of any payments she made to defendant that were not attributed to her outstanding balance, nor did she provide any evidence that any of the assessments or fees defendant charged her were somehow improper or inaccurate. As a consequence, the trial court also found that plaintiff's evidence and discussions regarding the amount of her debt as stated at various points in the past did not create a question of fact regarding the accuracy of the most current statement of her account that defendant submitted, which documented payments received and charges incurred from late 2009 until September 25, 2020. We find no error in the trial court's findings. Plaintiff did not provide any evidence or argument actually contradicting the accuracy of defendant's account statement. Plaintiff also ignored the record evidence explaining that late fees, interest, and costs and fees related to collection would continue to accrue with respect to unpaid assessments. This evidence explains what plaintiff apparently failed to comprehend, which is that her debt to defendant would continue to grow while she remained in arrears.

Plaintiff's appellate argument, much like her argument in the trial court, appears to rely on what can best be described as a failure to acknowledge and challenge defendant's uncontested relevant documentary evidence to claim that there is a question of material fact. Merely claiming there is a question of fact does not make it so. "When opposing a properly supported motion for summary disposition under MCR 2.116(C)(10), the nonmoving party cannot rely on mere allegations or denials in his or her pleadings to establish a question of fact. Rather, the nonmoving party must present evidence that establishes that there is a genuine issue of disputed fact on the issue raised by the moving party." *Franks v Franks*, 330 Mich App 69, 85; 944 NW2d 388 (2019) (citation omitted). Plaintiff has not shown that the trial court erred by granting summary disposition in defendant's favor on plaintiff's wrongful foreclosure claim.

## B. BREACH OF CONTRACT

Next, plaintiff argues the trial court erred in granting defendant summary disposition on plaintiff's breach of contract claim. Plaintiff contends that defendant breached its contractual obligation under its bylaws by failing to provide plaintiff with notice of the foreclosure ten days before the publication of the notice of foreclosure.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (quotation marks and citation omitted). This Court has previously explained that "[c]ondominium bylaws are interpreted according to the rules governing the interpretation of a contract." *Tuscany Grove*, 311 Mich App at 393. We begin by examining the language of the bylaws, and clear and unambiguous language is enforced as written. *Id*.

Plaintiff refers to the following provision in the bylaws to support her breach of contract claim:

> (c) <u>Notice of Action</u>. Notwithstanding the foregoing, neither a judicial foreclosure action nor a suit at law for a money judgment shall be commenced, nor shall any notice of foreclosure by advertisement be published, until the expiration

of 10 days after mailing, by first class mail, postage prepaid, addressed to the delinquent Co-owner(s) at his or their last known address, a written notice that 1 or more installments of the annual assessment levied against the pertinent Unit is or are delinquent and that the Association may invoke any of its remedies hereunder if the default is not cured within ten (10) days after the date of mailing. . . .

Plaintiff's sole argument on appeal is that "Defendant/Appellee had a duty under the bylaws to provide the Plaintiff/Appellant with notice of the foreclosure ten days before the publication of the notice of foreclosure" and that defendant violated the bylaws by failing to do so.

As an initial matter, plaintiff appears not to understand that the language of the bylaws does not require 10 days advance notice of the "*foreclosure*" to the co-owner before publication of a notice of foreclosure by advertisement as plaintiff contends. Instead, the language requires advance "written notice that 1 or more installments of the annual assessment levied against the pertinent Unit is or are delinquent and that the Association may invoke any of its remedies hereunder if the default is not cured within ten (10) days after the date of mailing." This clear and unambiguous language must be applied as written. *Tuscany Grove*, 311 Mich App at 393. Plaintiff fails to provide any evidence or explanation how this notice requirement was not satisfied by the record evidence of the December 11, 2019 letter and attached documents informing her that the automatic stay in her bankruptcy case had been lifted, that defendant was now entitled to foreclose on its lien against plaintiff's unit based on unpaid assessments, that the current amount of the lien was $30,220.21, that this amount would continue to increase as further charges accrued, and that plaintiff needed to pay defendant what she owed by December 23, 2019, in order to remove the lien. The notice of foreclosure by advertisement was published more than a month later. Again, plaintiff's bare assertions that defendant did not comply with the notice requirements of the bylaws are insufficient to create a question of fact in light of the record evidence of sufficient compliance with the notice provision. *Franks*, 330 Mich App at 85.

Plaintiff's appellate argument fails to demonstrate that the trial court erred by concluding that there was no genuine issue of material fact regarding plaintiff's breach of contract claim. *Bayberry Group*, 334 Mich App at 393.

C.  MCPA CLAIM

Finally, plaintiff argues that the trial court erred by granting defendant summary disposition on plaintiff's MCPA claim. Plaintiff maintains that defendant violated certain provisions of MCL 445.903.

"Section 3 of the MCPA, MCL 445.903, declares unlawful, '[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.' " *Nelson v Assoc Fin Servs Co of Indiana, Inc*, 253 Mich App 580, 598; 659 NW2d 635 (2002) (alteration in original). "Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or

commerce" are defined in MCL 445.903(1). Plaintiff contends that defendant committed the following unlawful conduct under MCL 445.903(1):[1]

> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

> * * *

> (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

> (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Plaintiff specifically alleges that defendant violated the above quoted provisions of MCL 445.903(1) by improperly declaring plaintiff in default on the basis of an inaccurate debt, misrepresenting the amount of the debt plaintiff owed, and violating the notice provision of its bylaws. Plaintiff asserts that she was confused about the amount of the debt and how it had become so large, apparently believing that the debt was based only on unpaid assessments while ignoring the evidence that defendant was also authorized to charge her for late fees, attorney fees, interest, and the costs of collection, as well as the evidence documenting the charges and credits to her account going back to 2009 when plaintiff stopped paying her assessments.

To support her MCPA claim, plaintiff relies on the same factual allegations regarding defendant's conduct that she relied on to support her wrongful foreclosure and breach of contract claims. However, as we have already discussed, plaintiff has not provided any evidence of inaccuracies related to her account or the amount she owed defendant, nor has plaintiff provided any evidence that defendant violated the notice requirements of its bylaws. Hence, although plaintiff may have been confused about various circumstances as she claims, she has not provided any evidence of any conduct committed by defendant that caused that confusion, MCL 445.903(1)(n), and she has not provided any evidence that defendant made a misrepresentation of material fact or failed to reveal a material fact, MCL 445.903(1)(bb) and (cc). The trial court therefore did not err by granting summary disposition in favor of defendant on plaintiff's MCPA claim.[2] *Franks*, 330 Mich App at 85.

Affirmed. Defendant having prevailed in full is entitled to costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[1] The quoted provisions have not been changed by the recent amendments to this statute. See 2020 PA 296; 2021 PA 46.

[2] Based on this conclusion, we need not resolve plaintiff's argument that defendant was involved in trade or commerce for purposes of MCL 445.903(1).